# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| MACROSOLVE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 6:11-cv-287 |
| | ) | |
| ANTENNA SOFTWARE, INC. et al. | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## RESPONSE TO DEFENDANTS' MOTION FOR LEAVE
## TO SUPPLEMENT THEIR INVALIDITY CONTENTIONS

**I.      INTRODUCTION**

Seven months ago, when their final invalidity contentions were due, defendants chose to take a shotgun approach. They served a truly massive set of invalidity contentions. They identified 250 separate prior art references, spanning 10,000 pages. They sent over 1,700 pages of claim charts. And they said they were relying on every possible combination of the prior art.

Despite having previously served this massive set of invalidity contentions seven months ago, defendants now want to add seven additional prior art references to this case – references that have never been disclosed before now (even though it appears that Geico knew about at least some of them several months ago). At this stage of the litigation (i.e. fifteen months in) defendants should be reducing the amount of prior art they have asserted in this case, not adding to it.

The Court should reject defendants' request to expand the prior art at issue in this case for three reasons. First, defendants have no excuse for not identifying these additional patents before the deadline for invalidity contentions (or at least shortly thereafter). Defendants are not seeking leave to supplement with some obscure prior art that was hard to locate. The prior art references they seek to add are all publicly available, published patents or patent applications. They could easily have been located and disclosed long before now.

Second, defendants *intentionally delayed* disclosing these references for months after discovering them. As explained below, at least Geico knew about these references long before it disclosed them to MacroSolve. Geico held onto them so that it could stage a "gun-to-the-head" meeting in which it demanded that MacroSolve dismiss the case against it by 4:00 pm the same day, or else it would file a previously prepared 789-page request for reexamination.

Third, defendants have not shown why it is important to add these seven references to the massive number of references that are already part of their invalidity contentions. Defendants

- 1 -

already have 250 chances to invalidate the patent-in-suit. They do not need 257. Indeed, defendants have asserted in their invalidity contentions that at least 80 of the references anticipate the claimed invention; *i.e.,* that they disclose each and every element of the claimed invention. The additional seven references that defendants now seek to add are merely alleged to render the patents-in-suit obvious when combined in various ways with other prior art references. So it cannot be especially important to defendants that they be allowed to add these additional references.

## II. LEGAL STANDARD

Patent Rule 3-3 requires that "each party opposing a claim of patent infringement, shall serve on all parties its 'Invalidity Contentions' which must contain . . . [t]he identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious." P.R. 3-3 (a). Once a party's invalidity contentions are served, they are deemed that party's **final invalidity contentions** unless the party has a basis to amend or supplement its contentions that is permitted under the patent rules. P.R. 3-6(a) (emphasis added). "Apart from amendments designed to take account of the district court's claim construction, amendments are permitted **only for 'good cause'** even though the period allowed for discovery typically will not have expired." *O2 Micro Int'l Limited v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1360 (Fed. Cir. 2006) (emphasis added); P.R. 3-6.

In determining whether good cause exists, the Court considers (1) the explanation for failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) the potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice. *S & W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003); *Cummins-Allison Corp. v. SBM Co., Ltd.*, 2009 WL 763926, at *2 (E.D. Tex. Mar. 19, 2009). All of these factors weigh against defendants' motion for leave.

### III.      DEFENDANTS WERE NOT DILIGENT

The defendants have not met their burden of establishing they were diligent (1) searching for the new prior art references, or (2) disclosing the references once they were discovered. Because defendants have failed to meet this burden, their motion for leave to amend should be denied.

Geico has disclosed that it discovered one of the prior art references defendants now seek to add to this case in January, and another in February – six months after the deadline for invalidity contentions.  Def. Mtn. at 4.  Both of these references were discovered by prior art search firms.  *Id.*  Defendants do not state when the firms were engaged, or why it took so long to find these references.  Def. Mtn. at 4.  Regardless, there was ample time for defendants to hire prior art search firms and search for publicly available patents and patent application prior art references **before** the deadline for invalidity contentions.  *See Computer Acceleration Corp. v. Microsoft Corp.*, 481 F. Supp. 2d 620, 625 (E.D. Tex. 2007) (finding that a seven-week time constraint to produce invalidity contentions did not weigh in favor of granting defendant's request to amend its ICs).

And then there are the five other references.  How were they discovered? When were they discovered? How long did defendants have them before they were disclosed? The glaring absence of answers to these questions shows that defendants were not diligent in searching for this prior art and do not have good cause to supplement their invalidity contentions.

Moreover, the references defendants wish to add are U.S. patents, and European and PCT patent applications.  Def. Mtn. at 2-3.  These are not prior art references that defendants only were able to locate in the bowels of a storage container at some third party private company.  In fact, defendants could have used free public searching tools such as Google patent search or the WIPO search database to find all of these references.  Yet it took defendants seven months after

the deadline to come forward with them. Why? Defendants do not say. Ex. A at 3 [*Cardsoft, Inc., et al. v. VeriFone Systems, Inc. et al.*, No. 2:08-cv-98, slip op. (E.D. Tex. May 28, 2012)]; s*ee also Sightsound Tech., LLC v. Apple, Inc.*, 2013 U.S. Dist. LEXIS 51964, at *9 (W.D. Pa. April 11, 2013) (granting in part Plaintiff's Motion to Strike Untimely References to Prior Art where Defendant failed to explain why it should not have known of publicly available prior art).

If defendants' motion is granted, a dangerous precedent is established which allows defendants to "peruse volumes of potential prior art at their leisure, and amend required disclosures at their leisure" effectively rendering Court ordered deadlines meaningless. *Sightsound Tech., LLC*, 2013 U.S. Dist. LEXIS 51964, at *9. It would also allow defendants to amend or supplement their invalidity contentions any time a hired prior art search firm finds a new reference. That is not the purpose of the patent rules or the deadlines set by the Court. Defendants' assumption that MacroSolve will likely have to confront these references at the PTO and other pending cases ignores the importance of enforcing the disclosure and discovery rules to ensure that outcomes are based upon the merits, and not unduly influenced by surprise and delay.

It is bad enough that defendants did not disclose these references to MacroSolve until seven months after their invalidity contentions were due. But what is much worse is that once they knew about them, they did not immediately disclose them. Instead, Geico purposely held on to them in order to try to gain a strategic advantage in this litigation. Geico handed them over to reexamination counsel who used them to prepare a 789-page reexamination request. Several months later, after the reexamination request was completely finalized, Geico staged a "gun-to-the-head" meeting, threatening to file the request unless MacroSolve dismissed Geico by 4:00 pm the same day. Defendants not only failed to diligently locate the prior art they now want to inject into the case before their invalidity contentions were due. They also failed to disclose the references even after they knew about them, and did so for their own strategic reasons.

## IV. DEFENDANTS HAVE NOT ESTABLISHED THE IMPORTANCE OF THE REFERENCES

Defendants have also failed to explain how the prior art references are of such importance that they should be given leave to supplement their invalidity contentions.

Defendants' arguments as to the "importance" factor amount to (1) claims that the new invalidity arguments include detailed charts and diagrams and (2) a conclusory statement that the references are important. Def. Mtn. at 4-5. Defendants do not bother explaining why these references are necessary or better than the 250 prior art references they have already disclosed. A conclusory statement to the court that the references "are important" does nothing to help the Court determine how the new references are vital to the case. The lack of explanation on this factor alone is enough for the Court to deny defendants' motion. *See, e.g., CoreLogic Info. Solutions, Inc. v. Fiserv, Inc.*, 2012 U.S. Dist. LEXIS 130554 (E.D. Tex. Sept. 12, 2012) (denying motion for leave to amend because defendants failed to show the importance of the late prior art to the defense of their case).

Additionally, Geico's *ex parte* reexamination request is based solely on obviousness. Def. Mtn. at 4-5. The new prior art relied on in Geico's reexamination request is not anticipatory prior art. *Id.* That is, it does not disclose each and every element of the asserted patent and must be combined with other prior art to invalidate. Based on this fact alone, it appears that the new references are not important, especially given that defendants have already asserted at least 80 prior at references that they say actually anticipate the claims.

## V. MACROSOLVE IS ALREADY PREJUDICED

MacroSolve is already prejudiced by the fact that defendants have served 250 references and buried their real invalidity contentions. In fact, MacroSolve has been forced to file motions to limit the invalidity contentions. *See* Dkt. No. 265, Dkt. No. 40 of No. 6:12-cv-46. Defendants should be reducing the number of references they are relying on in this case, not increasing them.

- 5 -

Additionally, allowing defendants to add new prior art now would prejudice MacroSolve because defendants already have MacroSolve's claim construction positions. *See* Dkt No. 377. (True, because of scheduling changes, MacroSolve will file a replacement brief. But defendants have already obtained a preview of MacroSolve's positions and arguments.) The Patent Local Rules are designed to require each side to set forth their infringement positions and invalidity positions before they are required to stake out claim construction positions, not after. Allowing defendants to add new prior art to the case this late would fundamentally be unfair.

## VI. A CONTINUANCE IS NOT AVAILABLE

The claim construction hearing is set for September 26, 2013, fact discovery ends on December 30, 2013, and trial is scheduled for June 9, 2014. Dkt. No. 390. A continuance would likely require moving the claim construction hearing dangerously close to the fact discovery deadline. Consequently, a continuance is not available in this case.

## VII. CONCLUSION

For the reasons stated above, MacroSolve respectfully requests that this Court deny Defendants' Motion For Leave To Supplement Their Invalidity Contentions.

Dated: May 3, 2013

Respectfully submitted,

/s/ Califf T. Cooper
Matthew J. Antonelli (lead counsel)
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Califf T. Cooper
Texas Bar No. 24055345
califf@ahtlawfirm.com
ANTONELLI, HARRINGTON &
THOMPSON LLP

        4200 Montrose Blvd, Suite 430
        Houston, TX 77006
        (713) 581-3000
        (713) 581-3020 fax

        S. Calvin Capshaw
        State Bar No. 03783900
        Email: ccapshaw@capshawlaw.com
        Elizabeth L. DeRieux
        State Bar No. 05770585
        Email: ederieux@capshawlaw.com
        D. Jeffrey Rambin
        State Bar No. 00791478
        Email: jrambin@capshawlaw.com
        CAPSHAW DeRIEUX, LLP
        114 E. Commerce Ave.
        Gladewater, Texas 75647
        Telephone:  903-236-9800
        Facsimile:  903-236-8787

        *Attorneys for MacroSolve, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 3rd day of May, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

        /s/  Califf T. Cooper
        Califf T. Cooper